UNITED STATES of America,
Plaintiff–Appellee,

v.

Philip S. MORRELL, Defendant–
Appellant.

No. 94–5423.

United States Court of Appeals,
Fourth Circuit.

Argued June 9, 1995.

Decided Aug. 10, 1995.

**ARGUED:** Stephen Douglas Herndon, Wheeling, WV, for appellant. Lisa Grimes Johnston, Asst. U.S. Atty., Wheeling, WV, for appellee. **ON BRIEF:** William D. Wilmoth, U.S. Atty., Wheeling, WV, for appellee.

Before RUSSELL and MURNAGHAN, Circuit Judges, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge RUSSELL wrote the opinion, in which Judge MURNAGHAN and Judge FABER joined.

## OPINION

DONALD RUSSELL, Circuit Judge:

Defendant Philip S. Morrell appeals the district court's decision to sentence him as an armed career criminal under 18 U.S.C. § 924(e). We affirm.

### I.

On September 20, 1993, a federal grand jury in the Northern District of West Virginia returned an indictment charging Morrell with two counts of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). On March 14, 1994, Morrell pled guilty to one count and the government agreed to dismiss the other count at sentencing. Morrell's plea agreement stated that he would be exposed to a maximum penalty of ten years imprisonment and certain fines.

On April 15, 1994, the probation officer submitted a presentence report (PSR) recommending that the district court sentence Morrell as an armed career criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 be-

cause he had three previous convictions for violent felonies. In October 1980, Morrell pled guilty to assault during the commission of a felony and received a sentence of two to ten years imprisonment.[1] The court suspended his sentence and placed him on probation for three years. Morrell's probation was revoked on February 23, 1981, and he was ordered to serve the original prison term. He was paroled on October 4, 1983. On March 12, 1985, Morrell pled guilty to non-aggravated robbery, which he had committed on January 13, 1984, and burglary, which he had committed on January 12, 1984. On April 22, 1985, he received a sentence of five to eighteen years imprisonment for the robbery and a concurrent sentence of one to fifteen years for the burglary. Morrell was paroled from these sentences on August 20, 1990.

Morrell and the government objected to the probation officer's classification of Morrell as an armed career criminal. The government argued that Morrell's 1980 conviction fell within an exception in 18 U.S.C. § 921(a)(20) because his civil rights had been automatically restored when he completed his sentence. The probation officer responded by filing an addendum to the PSR stating that Morrell's civil rights could not have been restored because he had either been in prison or under parole supervision since February 23, 1981.

The district court conducted a sentencing hearing on May 23, 1994. The government accepted the reasoning of the probation officer and withdrew its objection to the PSR. Morrell conceded that he never received a certificate of discharge restoring his civil rights. The probation officer testified that Morrell should be sentenced as an armed career criminal for the reasons stated in the Addendum to the PSR. The district court sentenced Morrell to fifteen years imprisonment, the statutory minimum sentence for

armed career criminals under 18 U.S.C. § 924(e).

## II.

In this appeal, Morrell challenges only his classification as an armed career criminal for sentencing purposes. The armed career criminal enhancement provisions of 18 U.S.C. § 924(e)(1) provide that a person who has violated 18 U.S.C. § 922(g) and who has had at least three previous convictions for a violent felony or serious drug offense shall be imprisoned for not less than fifteen years without parole. Convictions for "any crime punishable by imprisonment for a term exceeding one year" are included as predicate convictions for the enhanced penalty, 18 U.S.C. § 922(e)(2)(B), but convictions for which a person has had his civil rights and firearm privileges restored are excluded, 18 U.S.C. § 921(a)(20).[2] See United States v. Hassan El, 5 F.3d 726, 733 (4th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994). We review de novo the district court's determination of whether a defendant's civil rights have been restored because it involves a purely legal determination. See United States v. Haynes, 961 F.2d 50, 51 (4th Cir.1992).

Even though Morrell did not receive a certificate of discharge restoring his civil rights, he claims that under West Virginia law all his civil rights automatically were restored in 1984 and 1992 when he satisfied his prison sentences. If a felon has not received a certificate restoring civil rights, a court looks to "the whole of state law" of the jurisdiction in which the predicate conviction occurred to determine whether a felon's civil rights have been restored. Hassan El, 5 F.3d at 734. The restoration of civil rights need not be complete, but it must be substantial. Id. The term "civil rights" generally includes "the right to vote, the right to

---

1. Except for the charges in the current appeal, all of Morrell's previous convictions occurred in the Circuit Court of Pleasants County, West Virginia.

2. Section 921(a)(20) provides in pertinent part: Any conviction which has been expunged, or set aside or for which a person has been par-

doned or has had his civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.
18 U.S.C. § 921(a)(20).

hold public office, and the right to serve on a jury." *Id.* This Court has held that the loss of the right to sit on a jury "precludes a finding of a substantial restoration of civil rights necessary to satisfy § 921(a)(20)." *Id.; United States v. Metzger,* 3 F.3d 756, 759 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994).

In *Berger v. United States,* 867 F.Supp. 424, 428–31 (S.D.W.Va.1994), the United States District Court for the Southern District of West Virginia addressed the issue of whether a defendant's civil rights were automatically restored upon the completion of his probated sentence in 1985 for a West Virginia felony. The *Berger* court determined that because a felony constitutes an "infamous offense" under West Virginia law, *see State v. Bongalis,* 180 W.Va. 584, 378 S.E.2d 449, 455 (1989); *State v. Maynard,* 170 W.Va. 40, 289 S.E.2d 714, 718 (1982), the defendant was permanently disqualified from jury service in the courts of West Virginia under W.Va.Code § 52–1–8. *Berger,* 867 F.Supp. at 430. Therefore, the court concluded that based on the reasoning of *Hassan El* and *Metzger* the defendant's civil rights were not automatically restored upon the expiration of his probationary sentence. *Berger,* 867 F.Supp. at 430–31.

Morrell, like the defendant in *Berger,* offers two opinions of the West Virginia Attorney General to support the proposition that his civil rights were automatically restored upon completion of his sentence. The *Berger* court carefully analyzed and rejected these opinions. We agree with the *Berger* court's analysis that the opinion issued on July 11, 1972, 55 Op.W.Va.Att'y Gen. 3 (1972), discussed only the right to vote and the opinion issued on February 1, 1965, 51 Op.W.Va.Att'y

Gen. 182 (1965), did not take into account an amendment to the statute governing jury service. *See Berger,* 867 F.Supp. at 429. Prior to 1945, "persons convicted of infamous crimes" were *exempted* from jury service, but not *disqualified. See, e.g.,* W.Va.Code of 1932 § 52–1–2; *State v. Beale,* 104 W.Va. 617, 141 S.E. 7, 11 (1927). In 1945, the statute was amended to disqualify such persons from jury service. W.Va.Code of 1943 § 52–1–2 (1945 Supp.). Because the attorney general did not take this amendment into account, we conclude that the *Berger* court properly discredited the opinion issued in 1965.[3]

### III.

We agree with the reasoning of the *Berger* court that the civil rights of a convicted felon cannot be restored as an operation of West Virginia law upon the completion of a prison sentence because W.Va.Code § 52–1–8 disqualifies convicted felons from jury service.[4] The disqualification of felons from jury service has remained in effect since 1945. *See Berger,* 867 F.Supp. at 429. Because Morrell did not receive a certificate of discharge and his first felony conviction disqualified him from jury service in 1984, we conclude that his civil rights were not substantially restored upon the completion of his sentence in 1984 and therefore the district court properly sentenced him as an armed career criminal.

*AFFIRMED.*

---

3. We note that this Court stated in *United States v. Herron,* 38 F.3d 115, 117 (4th Cir.1994) (per curiam), that the government conceded that a felon's civil rights had been substantially restored in West Virginia upon the completion of his sentence and cited the 1965 attorney general opinion discussed above. *Herron,* 38 F.3d at 117. Because the government conceded the restoration of the defendant's civil rights in *Herron,* the issue was not properly before the Court. Therefore, *Herron* does not control our determination of the issue today.

4. We note that a convicted felon's civil rights could be restored in West Virginia for the purposes of the armed career criminal enhancement upon receipt of an appropriate certificate of discharge. *United States v. Reedy,* 990 F.2d 167, 171 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 210, 126 L.Ed.2d 166 (1993). However, felons who receive a certificate of discharge on or after July 7, 1989, may not possess firearms without a separate order from a circuit court pursuant to the requirements of West Virginia Code § 61–7–7. *See Herron,* 38 F.3d at 117–18 (holding that a standard discharge order could not serve as a § 61–7–7 order).